SANDRA R. BROWN
Acting United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
JAMES C. HUGHES (CBN 263878)
VALERIE L. MAKAREWICZ (CBN 229637)
Assistant United States Attorney
      Federal Building, Suite 7211
      300 North Los Angeles Street
      Los Angeles, California 90012
      Telephone: (213) 894-2729
      Facsimile: (213) 894-0115
      E-mail: Valerie.Makarewicz@usdoj.gov
Attorneys for United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SEAN DAVID MORTON, et al.,<br><br>Defendant. | No. CR 15-00611-SVW<br><br>UNITED STATES' SENTENCING MEMORANDUM AND RESPONSE TO THE PSR FOR DEFENDANT SEAN DAVID MORTON; DECLARATION; EXHIBITS |

The United States of America, by and through its undersigned counsel, hereby submits a memorandum in anticipation of the sentencing of defendant Sean David Morton currently scheduled for June 19, 2017.

As set forth more fully below, the United States requests that the Court sentence defendant to a term of imprisonment of 87 months, followed by 5 years of supervised release, and further order that defendant pay $480,322.55 in restitution to the Internal Revenue Service (IRS), and a special assessment of $2,900.

On May 12, 2017, the United States received the Probation Office's Presentence Investigation Report (PSR) and the disclosed recommendation letter (Letter) prepared with respect to defendant.  See Docket Nos. 222, 223.  The United States submits the

following in response to the sentence recommendation of the Probation Office and reserves its right to respond to any argument or objections of defendant.

The United States' Sentencing Brief is based on the attached memorandum of points and authorities, the PSR, the Letter, the evidence and testimony adduced at the trial of this case, the records and files, the Declaration of IRS-CI Special Agent John Lucero and supporting exhibits attached thereto, and any argument the Court may adduce at the hearing on this matter.

DATED: May 26, 2017                SANDRA R. BROWN
                                   Acting United States Attorney
                                   THOMAS D. COKER
                                   Assistant United States Attorney
                                   Chief, Tax Division


                                   ____/s/_____
                                   VALERIE L. MAKAREWICZ
                                   JAMES C. HUGHES
                                   Assistant United States Attorneys
                                   Attorneys for the United States of America

# **Table of Contents**

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

I.   Summary of the United States' Sentence Recommendation...........................1

II.  Procedural History.........................................................................1

a.   Indictment ...............................................................................1

b.   Trial......................................................................................2

c.   PSR and Letter ..........................................................................2

III.   Government's Offense Level Calculation...........................................3

a.   Loss Regarding Section 287 counts ................................................3

b.   Loss Regarding Section 371 count ..................................................6

c.   Loss Regarding Section 514 counts .................................................6

d.   Defendant's conduct during the prosecution and sentencing was, and continues to be, obstreperous, and should be considered as obstructionist under U.S.S.G. § 3C1.1........................................................................10

e.   Combined Offense Levels and Recommended Sentence..............................15

IV.   Consideration of Section 3553(a) factors.........................................18

a.   Nature and circumstances of offense and defendant's history and characteristics...........................................................................19

b.   Deterrence, respect for the law, and protection of the public .......................20

c.   Need to provide educational or vocational training ................................21

d.   Need to avoid unwarranted sentencing disparities ................................21

e.   Need for restitution...................................................................23

V.  Conclusion ...............................................................................23

-i-

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.   Summary of the United States' Sentence Recommendation**

The United States has no objection to the PSR's charge and conviction discussion, offense conduct discussion, the calculation of defendant's criminal history, sentencing options discussion, or the discussion regarding factors that may warrant departure.

The United States disagrees with the Probation Office's finding that defendant's total combined adjusted offense level is 28.  In an oversight, the PSR did not account for the loss related to defendant's making and passing of the fictitious checks/bonds to the IRS.  Further, after the submission of its sentence recommendation to the Probation Office, the United States determined it was appropriate to argue for a 2-point obstruction enhancement under U.S.S.G. § 3C1.1.  A term of **87 months** imprisonment is warranted in this case, as explained further below.

### **II.   Procedural History**

#### **a.   Indictment**

Defendant, along with his wife and co-defendant Melissa Morton, was charged in the first superseding indictment (FSI) filed on January 27, 2016, with one count of conspiring to defraud the United States in violation of 18 U.S.C. § 371 (Count 1), two counts of filing false claims against the United States in violation of 18 U.S.C. § 287 (Counts 2 and 3), and 26 counts of passing, presenting, and/or offering, false or fictitious financial instruments in violation of 18 U.S.C. § 514 (Counts 6-7 and 9-32) either on his behalf, or ones he and his co-conspirator marketed, sold, prepared, and passed on behalf of their "clients." Docket No. 17.  Count 1 of the FSI related to defendants' conspiracy to defraud the United States between March/April 2009 and April 2013.  Counts 2 and 3 of the FSI pertained to two fraudulent federal income tax returns filed by defendant during the aforementioned time period, wherein defendant claimed false federal tax

refunds based on nonexistent Original Issue Discount (OID) income and withholdings. Similarly, Counts 6 and 7 of the FSI related to two fictitious financial instruments submitted by defendant in an effort to pay off any debt he owed the IRS.  Count 10 of the FSI related to a fictitious financial instrument submitted by defendant to the California Franchise Tax Board.  Finally, Count 9 and Counts 11 through 32 of the FSI related to fictitious financial instruments prepared, marketed, and sold by defendant and his co-conspirator on behalf of clients who wanted to pay off their commercial debt with various financial institutions.

On February 4, 2016, defendant plead not guilty to all counts. Docket No. 31.

### b. Trial

Beginning on April 4, 2017, a four day trial commenced, and on April 7, 2017, a jury returned guilty verdicts against defendant Sean David Morton, and his co-defendant, Melissa Morton, on all counts.  Docket No. 195.

### c. PSR and Letter

On May 12, 2017, the Probation Office disclosed the PSR and Letter, wherein it recommend that defendant's offense level be 28, defendant's criminal history be Category I, and defendant be sentenced to a term of imprisonment of 78 months, which is the low-end of the advisory Sentencing Guidelines range for said offense level.  Letter, p. 1. This recommended term consists of 78 months on each of Counts 6, 7, and 9 through 32, and 60 months on each of counts 1, 2, and 3 of the FSI, all to be served concurrently. Id., p. 2. The Probation Office recommended the imposition of a 5 year term of supervised release, a restitution order of $480,322.55 payable to the IRS, and a special assessment of $2,900.  Id., pp. 1-2. The Probation Office recommends certain terms and conditions to be imposed on defendant during supervised release.  Id. p. 2.

///

-2-

### III.   **Government's Offense Level Calculation**

The United States provides the following substantiation of the loss in relation to the recommended offense level for defendant, similar to that it submitted to the Probation Office.  PSR, ¶ 13.

### a.  **Loss Regarding Section 287 counts**

#### i.   *Facts proven at trial*

Defendant was convicted of submitting false claims to the United States in Counts 2 and 3, in violation of 18 U.S.C. § 287, which conduct occurred from March/April 2009 through April 2013.  During this time period, defendant submitted numerous federal income tax returns and claims for refunds to the IRS claiming large refunds amounts.  Defendant's conduct in filing the false claims for refund can be grouped into four phases: March/April 2009, August 2010, November 2010, and June 2012.

As introduced into evidence at trial, in March/April 2009, defendant filed income tax returns with the IRS for years 2005, 2006, 2007, and 2008.  See Declaration of IRS Special Agent John Lucero, Exhibits 4, 5, 7, 10, 153 (Declaration).  Each return falsely claimed that defendant earned large amounts of OID income from various financial institutions and reported that the majority of this income had been withheld and paid over to the IRS.  The returns claimed that defendant was entitled to large federal tax refunds based on the difference between the resulting income tax and the amount of the reported withholdings.  As proven at trial, these claims were fraudulent, as defendant had no OID income, and no withholding paid over to the IRS.

In August 2010, defendant filed income tax returns claiming fraudulent tax refunds based on false OID income and non-existent income tax withholdings.  See Declaration, Exhibits 9, 11, 12.

In November 2010, defendant filed false income tax returns claiming even larger refunds, and paradoxically reported zero income but a large amount of

-3-

income tax withholdings, and claimed a refund for the entirety of these false withholdings. See Declaration, Exhibits 14-16.

In June 2012, defendant attempted to obtain false refunds from the IRS by filing a false Form 843, Claim for Refund.  See Declaration, Exhibit 18.

ii.    *Applicable Loss*

As seen in the Sentencing Guidelines and its related commentary, "tax loss" is the amount of the loss that was the object of the offense, including conduct that is a continuing pattern of violations of tax laws by the defendant.  U.S.S.G. § 2T1.1(c)(1) and commentary application note 2.  Total tax loss includes each instance that involved a false claim.  Id. This definition is supported in section 2B1.1 and related commentary, application note 3(A) of the Guidelines.  There, the Sentencing Commission defined the loss to include the greater of actual or intended loss, defined as the pecuniary harm the defendant purposefully sought to inflict.  Id.

As seen in the FSI Counts 2 and 3, the United States charged defendant with two violations of section 287, which were the claims for refund submitted by defendant in November, 2010 and June, 2012.  See Declaration, Exhibits 15, 18. The loss defendant sought to inflict was not limited to just these two claims for refund.  Even though the United States did not charge each return defendant submitted to the IRS, beginning in 2009 and continuing 2012, as separate violations of section 287, pursuant to the Sentencing Guidelines and as advocated in the PSR, such conduct should be included in calculating defendant's intended loss.  These false claims were the basis of defendant's conspiracy and the overt acts taken with respect to Count 1.

The following chart enumerates the entirety of defendant's intended loss with respect to every false claims for refund he submitted to the IRS:

| Date Claim Filed (Count, Corresponding Overt Act ¶, Exhibit #) | Claim for Refund | Amount |
|---|---|---|
| March 13, 2009 (Count 1, ¶ 17, Ex. 4) | 2006 Form 1040 | $1,560,634 |
| March 13, 2009 (Count 1, ¶ 18, Ex. 5) | 2007 Form 1040 | $1,754,594 |
| April 14, 2009 (Count 1, ¶ 20, Ex. 7) | 2005 Form 1040 | $136,077 |
| April 14, 2009 (Count 1, ¶ 21, Ex. 10) | 2008 Form 1040 | $479,506 |
| August 31, 2010 (Ex. 9)[1] | 2007 Form 1040 | $1,754,594 |
| August 31, 2010 (Count 1, ¶ 40, Ex. 11) | 2005 Form 1040 | $180,326 |
| August 31, 2010 (Count 1, ¶ 41, Ex. 12) | 2006 Form 1040 | $180,326 |
| November 5, 2010 (Count 1, ¶ 43, Ex. 14) | 2007 Form 1040 | $1,762,289.25 |
| November 19, 2010 (Count 1, ¶ 44, Count 2, Ex. 15) | 2006 Form 1040 | $2,809,921.18 |
| November 19, 2010 (Count 1, ¶ 45, Ex. 16) | 2005 Form 1040 | $244,230 |
| June 21, 2012 (Count 1, ¶ 47, Count 3, Ex. 18) | IRS Form 843 for 2006 | $1,560,634 |
| | **Total False Claims:** | **$12,423,131.43** |

Defendant Sean David Morton's base offense level for the section 287 offenses is **26**, as the intended loss exceeds $9.5 million, but is less than $25 million.  U.S.S.G. §§ 2T1.1, 2T4.1.[2]

---

[1] Though uncharged and not listed as an overt act, this return was filed with the IRS, and introduced into evidence at trial.  This effects the amount of loss stated in the PSR, ¶ 25, a typographical omission.

[2] If using the table at section 2B1.1(a) and (b) to calculate intended loss of section 287 violations, defendant's base offense level is also **26** (6 as base offense level, increased by 20), though the government maintains that the loss as calculated by the tax table section 2T4.1 is more appropriate. PSR, ¶¶ 41-52.

### b.  Loss Regarding Section 371 count

Defendant was convicted of conspiring to defraud the United States under 18 U.S.C. § 371 in Count 1.

Under U.S.S.G. § 2T1.9, the base offense level for the defendant is tied to the offense level as determined under the Sentencing Guidelines §§ 2T1.1 and 2T4.1.   As such, defendant's base offense level for the section 371 offense remains a Level 26.  PSR, ¶¶ 41-52.

### c.  Loss Regarding Section 514 counts

As charged in Counts 6, 7, and 9 through 32 of the FSI, defendant was convicted of making and passing false financial instruments with respect to himself and clients.

### iii.    Facts proven at trial re: Counts 6, 7, 10

With respect to defendant's making and passing false financial instruments for himself to the IRS, defendant submitted a false check in the amount of $5.2 million to the IRS, which purported to allow the IRS to draw upon U.S. Treasury funds to pay off any of his tax liability.  See Declaration, Exhibit 14.  Defendant signed and submitted this check,. Then, in 2013, defendant submitted a false bond to the IRS in the amount of $10 million, again, as purported payment of any outstanding tax liability with the IRS.  See Declaration, Exhibit 20.   Defendant was also convicted of passing a false bond to the California Franchise Tax Board in Count 10 in an attempt to resolve his debt.   See Declaration, Exhibit B.

### iv.    Facts proven at trial re: Counts 9, 11 through 32

Defendant's criminal conduct also involved the marketing of fictitious financial instruments to other individuals as a way to pay off debt.  In total, the government proved that defendants made and passed 23 fictitious financial instruments on behalf of others individuals.

///

-6-

*v.   Applicable Loss*

The total amounts of the check/bonds defendant and his co-conspirator made and passed are astronomical—the principal amounts of said instruments range from $50,000 (Count 32) to $10 million (Count 7).

The United States argues that the correct amount of loss as to the making and passing of fictitious financial instruments is perhaps not the amount of the false check/bonds themselves, but rather, the amount of the debt the check/bonds were trying to pay off on behalf of the defendant or his clients if the scheme had worked.

As to defendant's making and passing of the false check and bond, defendant was trying to pay off the erroneous refund the IRS issued to him in the amount of $480,322.55.  See Declaration, Exhibits 14, 20, 153.  Defendant made and passed the false check and bond as a form of payment to the IRS for this debt, since he had otherwise disposed of the erroneous refund shortly after receiving it.

As the Court is aware, in September 2015, the United States searched defendants' home pursuant to a warrant, wherein client files prepared and maintained by defendants were found.  In the various client files were copies of the balances of the debts each client was trying to resolve by using defendant's bond scheme.  Attached hereto are copies of the bills/statements for the clients, redacted for personal identifying information, which show the balances of the clients' debt they were trying to resolve.  See Declaration, Exhibits A-U.  In issuing and passing these bonds, defendant intended to defraud the various institutions receiving the subject bonds.  Therefore, the intended loss should be calculated based on the total outstanding debts sought to be discharged by the use of the bonds, as follows:

///

///

///

-7-

| Count | Client | Exhibit | Debtor/Bank Recipient | Amount |
|-------|--------|---------|-----------------------|--------|
| 9 | D.B. | A | IRS | $153,689 |
| 10 | Defendant | B | CA FTB | $115,816 |
| 11 | W.P.G. | C | Quicken Loans | $382,353 |
| 12 | W.P.G. | D | IRS | $44,497 |
| 13 | W.F.K. | E | PNC Bank | $110,000 |
| 14 | A.M. | F | PennyMac | $233,563 |
| 15 | M.W. | G | Chase | $66,734 |
| 16 | D.N.M. | H | Bank of America/AAA | $25,540 |
| 17 | D.N.M. | I | BJ/Barclay/Comenity | $32,389 |
| 18 | D.N.M. | J | Costco/AMEX | $9,484 |
| 19 | M.B.R. | K | Chevron | $403,630 |
| 20 | M.B.R. | L | ACS | $66,868 |
| 21 | M.C.U. | M | Chase | $26,000 |
| 22 | S.H.Y. | | Contra Costa County Treasurer | n/a |
| 23 | D.W. | N | CitiMortgage | $134,475 |
| 24 | E.C. | O | Santander Bank | $277,916 |
| 25 | T.C. | | Chase | n/a |
| 26 | P.M. | P | Nationstar | $236,024 |
| 27 | B.L. | | Navient | $75,000 |
| 28 | M.A.E. | Q | IRS | $204,582 |
| 29 | M.A.E. | U | CA FTB | $54,930 |
| 30 | M.G.K. | V | Nationstar | $444,682 |
| 31 | D.M.S. | W | Barclay | $15,185 |
| 32 | N.J.Z. | X | Bank of America | $37,428 |
| | | | *Total Intended Debt to be paid by bonds for clients:* | $3,151,785 |

| Count | Client | Exhibit | Debtor/Bank Recipient | Amount |
|-------|--------|---------|-----------------------|--------|
| 6/7 | Defendant | 14/20 | *Defendant's Debt with the IRS:* | $480,322.55 |
| | | | **Total Intended Debt to be paid by check/bonds:** | $3,632,107.55 |

See Declaration, Exhibits 14, 20, 153, A-U.

Based on the government's calculation of the intended loss of defendant's use of false check/bonds to pay off his debt with the IRS, and the intended loss of defendant's clients with their purchase of his bonds, under U.S.S.G. § 2B1.1, defendant's total offense level for each of the violations of 18 U.S.C. § 514 is **25**.[3] The base offense level is 7, as defendant was convicted of an offense (18 U.S.C. § 514) referenced in the Sentencing Guidelines §2B1.1, and these offenses have a statutory maximum term of imprisonment of 25 years.  The offense level is increased by 18 levels because the intended loss is more than $3.5 million, but less than $9.5 million. U.S.S.G. § 2B1.1(b)(1)(J).

///

///

///

---

[3] This is a different offense level than stated in the PSR, ¶ 28, 55.  When submitting its position to the Probation Office, the United States unintentionally omitted defendant's use of fake check/bonds to the IRS to wipe-out his debt in Counts 6 and 7, and such was not included in the calculation found in the PSR.  Id.  This inclusion increases the offense level by 2 levels more than what the Probation Office calculated.

-9-

### d. Defendant's conduct during the prosecution and sentencing was, and continues to be, obstreperous, and should be considered as obstructionist under U.S.S.G. § 3C1.1

The Court is familiar with the multitude of nonsensical pleadings defendant filed and stated in Court throughout the course of this criminal case, which has not abated since his conviction.[4]  Defendant's pattern of conduct of filing unintelligible pleadings began weeks after the initial indictment of defendants.  Docket No. 10. The day defendant was released from his arrest, he filed unintelligible pleadings which the assigned Magistrate Judge refused to file.  Docket No. 44.

While the case was pending, defendant continued to file senseless and frivolous pleadings, first focusing on challenging the government's prosecution of him, and later, turning his ire to challenging this Court's jurisdiction.  Docket Nos. 69, 72-81.

Defendant's obstreperous conduct increased markedly with the proximity of trial.  Docket Nos. 115-120, 130-138, 145-148, 158-167, 179-184.  The Court recognized these pleadings as "devoid of merit."  Docket No. 171, p. 3.

The morning of the first day of trial, defendant handed the assigned AUSAs a civil suit he filed in California State Court against them, as well as the United

---

[4]  In this argument, the United States distinguishes defendant's pattern of frivolous pleadings to others that defendant has brought against the government that state actual claims for relief—for example, defendants filed a civil suit against the United States for the return of property seized during the search of their residence pursuant to Fed. R. Civ. P. 41(g), wherein defendants generally limited their sovereign citizen rhetoric and made coherent legal arguments for the return of their property.  See Morton v. Lu, et al., 2:15-cv-09262-CBM-AGR (C.D. Cal., Dec. 1, 2015).  Such example shows that defendant clearly understands the effect of his nonsensical pleadings, and does not engage in nonsensical filings when it generally inures to his benefit.  See also, defendant's motion for reconsideration of the parties' stipulation for a continuance of this case, Docket No. 91.

-10-

States Attorney and the First Assistant United States Attorney, to stop the criminal trial. Defendant recently voluntarily dismissed this action after the United States removed the case to federal court and filed a motion to dismiss. See Morton v. Brown, et al., Case No. 2:17-cv-02403-R-JC (C.D. Cal. April 4, 2017).

Defendant's filings continued during the course of trial. Docket Nos. 187-188, 198-192.

Defendant's conduct persisted post-conviction, with sustained attacks on the Court's jurisdiction. Docket Nos. 213, 217-219.[5]

Defendant's conduct continued with the Probation Office in submitting further sovereign citizen documents during his interview. PSR, ¶ 81. Further, defendant did not provide the Probation Office with clear information regarding his financial condition. PSR, ¶¶ 149 through 152. Defendant reported no income on his financial statement, but monthly expenses of $3,306, with no genuine explanation as to how he meets these expenses. Id.

Then, on April 17, 2017, defendant, along with his co-defendant Melissa Morton, filed a federal civil suit against the assigned AUSAs, currently pending before Judge Gee. See Morton, et al., v. United States Inc., et al., Case No. 2:17-cv-02890-DMG-E (C.D. Cal. April 17, 2017).

---

[5] To that end, at the conclusion of defendant's sentencing, the government anticipates that it will move for defendant be immediately remanded into custody, as there is clear and convincing evidence that: 1) defendant has continuously denied that this Court has jurisdiction over him, 2) he is a flight risk as he has admitted to having passports and Canadian identification, and 3) as the court has found, brings the frivolous appeal of his case for the purpose of delay, is without merit, and does not present a substantial question of law or fact that would result in a reversal, order for new trial, a sentence that does not include incarceration. PSR, ¶ 81, 128; Docket No. 220; 18 U.S.C. §3143(b).

-11-

Currently, defendant is pursuing an appeal in the Ninth Circuit, wherein he claims that no court has jurisdiction over him.  See United States of America v. Morton, Case No. 17-50144 (9th Cir. April 26, 2017).

The design of the aforementioned conduct of defendant is crystal clear: to burden the court system, harass the prosecutors and the Court, and delay the administration of justice.  One of the goals of the "sovereign citizen" criminal subculture is the harassment and burdening of courts with mountains of frivolous paperwork – what some courts have referred to as "paper terrorism" tactics – in an effort to degrade the court system over time and make it more difficult to efficiently resolve cases, especially tax cases.  See, e.g., El Ameen Bey v. Stumpf, 825 F.Supp.2d 537, 540 (D. N.J. 2011).   In fact, during the investigation of this case, defendant touted he was a "paper terrorist" when giving seminars regarding his schemes.  On October 16, 2015, defendant gave a lecture at the New Life Expo, held in New York City, New York.  An undercover IRS Special Agent attended defendant's lecture, which was recorded and transcribed.  Declaration, Exhibit V. As defendant explained, in June 2016, he was in court for a case involving his driver's license.  Defendant stated he filed a motion to dismiss, and stated the following regarding how he "resolved" the matter:

> DR. MORTON: And he's like okay. And then the Judge is like all right. So now this girl chases me out of the courtroom, because now they've got this thing on their docket for two years, right? For two years. And she chases me out of the courtroom and she goes oh, Dr. Morton. And I said you know what? You ever heard of those people they call *paper terrorists*? You ever hear of those guys? They file liens against your bond for hundreds of millions of dollars and make sure that you never see the inside of a courtroom because you can't work because you have a lien against your bond and shut down courtrooms? She goes yeah, I've heard of those people. And I said, "I'm that guy."

-12-

[Laughter]

> DR. MORTON: I am that guy. And here's what we're going to do. I will accept, so you can save face, I will accept a fine of less than 250 dollars and we'll drop this to an infraction of simply driving without a license. Have we got a deal? Or I will shut this place down. And she's like wait here. And she runs through the place. About a minute later she comes out and she goes we're taking your deal.

Declaration, Exhibit V [emphasis added].

Defendant's filing false and frivolous documents with this Court, as well as filing frivolous cases in California state court and the Ninth Circuit against the prosecutors or the Court, is meant to cause delay, waste court resources, and constitutes obstruction of justice for purposes of U.S.S.G. § 3C1.1  This section provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instance offense, of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or B) a closely related offense, increase the offense level by 2 levels.

As to the multitude false, fraudulent, and frivolous papers defendant has filed with this court since his indictment, defendant has willfully and belligerently filed these documents.  In United States v. Taylor, 509 Fed.Appx. 205, 211-13 (4th Cir. 2013) (unpublished), the Fourth Circuit found the district court was more than justified in finding for the 2-point obstruction enhancement when the defendant, a sovereign citizen, filed numerous frivolous filings despite repeated warnings of the consequences of his behavior.  The Fourth Circuit found the filing of numerous frivolous pleadings and lawsuits with the intent to hinder the prosecution can be considered obstructive conduct.  Id., at 211.  Like the Court in the instant case, the

-13-

district court in <u>Taylor</u> often warned the defendant, in open court, as to the consequences of his actions and his purported "defense":

> [I]f you are found guilty and the time comes for sentencing, I want you to know that under our sentencing guidelines, if I conclude that you've taken steps to obstruct justice, that that could enhance the amount of sentence you might be recommended for under those guidelines.
>
> And the court warned Taylor again when it told him that "I'll be very patient with you, but I want to make sure you understand that when and if you're found guilty, if that happens, and you're presumed to be innocent, that that could affect your sentence potentially."

<u>Id.</u>, at 212.  Despite these warnings, the defendant continued to file groundless filings.  And at sentencing, the district court found:

> [T]his is clearly a case in which there's been a systematic effort to thwart this prosecution, both by actions internal to the case with the pleadings that I have summarized previously, as well as frivolous suits that were consistently dismissed by this court after a considerable amount of effort by staff of this court and by this judge to deal with it.

The Fourth Circuit agreed that the disruptive conduct, resulting in the expenditure of administrative and judicial time and expense, was sufficiently obstructive to warrant the enhancement under section 3C1.1.  <u>Id.</u>, at 213.[6]

This Court has expended a lot of effort to repeatedly warn defendant, at various stages of this litigation, that his actions in continuing to file frivolous pleadings and making frivolous arguments have real consequences.  Likewise, the

---

[6] The Tenth Circuit has held that the mere threat of filing of frivolous lawsuits against IRS agents, as well as the actual filing of frivolous lawsuits to quash investigative summonses, is grounds for the obstruction enhancement.  <u>United States v. Hopkins</u>, 509 Fed.Appx. 765, 782 (10th Cir. 2013)(unpublished).

Court here should determine the real consequences to taking actions designed to thwart the court system and the proper administration of justice, by finding that defendant has engaged in obstructionist behaviors to impede the prosecution and sentencing of this matter, and increase his offense level by 2 levels. This is clearly a case where defendant has undertaken a systematic effort to impede this prosecution and the resulting sentencing. Like the defendant in Taylor, defendant consciously disregarded the Court's repeated warnings to him. He has made numerous false and frivolous legal claims that he knows are untrue. He filed two frivolous lawsuits against government prosecutors, one of which was brought with the express purpose of halting the trial of this case. The application of the 2-point enhancement for the obstruction and impediment of justice is warranted under section 3C1.1.

### e. Combined Offense Levels and Recommended Sentence

Pursuant to U.S.S.G. §§ 3D1.1 and 1.2, the loss relating to the Form 1099-OID scheme by defendant should be one "Group of Closely Related Counts" (Group #1) and the loss pertaining to the bonds defendant made and passed on his behalf and that of his clients should be a separate Group (Group #2). These separate Groups each involve distinct criminal undertakings by the defendant, while within each group, the individual actions involve substantially the same harm and criminal objective. PSR, ¶¶ 41-60.

Under U.S.S.G. § 3D1.3, the highest offense level for defendant is with respect to Group #1, as his total offense level is 26, while the Group #2 offense level is 25. PSR, ¶ 61.

Under U.S.S.G. § 3D1.4, defendant's Combined Offense Level is determined by taking the offense level applicable to the Group with the highest offense level, here Group #1, increasing that offense level pursuant to the

-15-

applicable table in this section of the Sentencing Guidelines.  Then, the Court must count one additional Unit for each Group that is equally serious or from 1 to 4 levels less serious, which is Group #2 at Level 25.  PSR, ¶ 61.

As argued above, filing false and frivolous documents with any court as a way to delay and waste limited court resources, as defendant did in this matter, constitutes obstruction of justice for purposes of U.S.S.G. § 3C1.1, and the Court should increase defendant's offense level by 2 levels.  If the court agrees to impose the obstruction enhancement, the offense level computation varies depending on to which offense the court assigns the enhancement, as follows:

*Scenario 1: Court increases the offense level related to § 287 counts, Group #1*

| Base Offense Level for § 287 offenses | 26 | U.S.S.G § 2T4.1(K) Loss is $12,423,131.43 |
| --- | --- | --- |
| Adjustment for obstruction of justice | +2 | U.S.S.G. §3C1.1 |
| Adjusted Offense Level (Group #1) | 28 | |

| Base Offense Level for § 514 offenses | 7 | U.S.S.G § 2B1.1(a)(1) |
| --- | --- | --- |
| Specific Offense Characteristics: | +18 | U.S.S.G. §2B1.1(b)(1)(K) Loss is $3,632,107.55 |
| Adjusted Offense Level (Group 2) | 25 | |

///

///

///

-16-

Multiple Count Adjustments

| Group # | Adjusted Offense Levels | Units |
|---------|-------------------------|-------|
| 1 | 28 | 1.0 |
| 2 | 25 | 1.0 |
| | Total Units | 2.0 |

Greater of the Adjusted Offense Levels above:        28 (Group #1)

Increase in Offense Level per Units above:        +2

**Combined Adjusted Offense Level:        30 (97-121 months)**

*Scenario 2: Court increases the offense level related to § 514 counts, Group #2*

| Base Offense Level for §287 offenses | 26 | U.S.S.G § 2T4.1(K) Loss is $12,423,131.43 |
|---------|-----|-------------|
| Adjusted Offense Level (Group 1) | 26 | |

| Base Offense Level for § 514 offenses | 7 | U.S.S.G § 2B1.1(a)(1) |
|---------|-----|-------------|
| Specific Offense Characteristics: | +18 | U.S.S.G. §2B1.1(B)(1)(K) Loss is $3,632,107.55 |
| Adjustment for obstruction of justice | +2 | U.S.S.G. §3C1.1 |
| Adjusted Offense Level (Group 2) | 27 | |

///

///

///

-17-

Multiple Count Adjustments

| Group # | Adjusted Offense Levels | Units |
|---------|-------------------------|-------|
| 1 | 26 | 1.0 |
| 2 | 27 | 1.0 |
| | Total Units | 2.0 |

Greater of the Adjusted Offense Levels above:     27 (Group #2)

Increase In Offense Level per Units above:     +2

**Combined Adjusted Offense Level:**     **29 (87-108 months)**

## IV.   Consideration of Section 3553(a) factors

After many years of flouting the law, defendant now faces sentencing. Defendant's criminal conduct, considered in light of the 3553(a) factors discussed below, calls for a meaningful punishment and a sentence of **87 months** imprisonment.

In determining the appropriate sentence to be imposed, this Court must also consider all of the sentencing considerations set forth in Title 18, United States Code, Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

and (7) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a).

### a. Nature and circumstances of offense and defendant's history and characteristics

In seeking an 87-month sentence, the United States is consciously advocating for a significant period of incarceration. This period of incarceration is commensurate with the seriousness and flagrancy of defendant's crimes. Defendant is a serial fraudster with a long history of perpetrating financial crimes and wasting precious time and resources of the government and the courts.

In 2010, the Securities and Exchange Commission brought a civil suit against both defendants for their participation in a foreign currency exchange scheme. See Securities and Exchange Commission v. Sean David Morton, et al., Case No. 1:10-cv-01720-KBF (S.D. N.Y 2010).[7] Defendants filed multiple sovereign citizen-type documents, all of which were rejected by the District Judge. At the conclusion of the suit, on March 7, 2013, the District Court entered judgment against defendants in the amount of approximately $11 million, for the losses related to their currency scheme.

Also, on June 27, 2013, defendants filed for Chapter 7 bankruptcy protection in this District. See In re Morton and Thomson, Case No. 2:13-bk-26725-BB

---

[7] During the SEC investigation, on March 18, 2009, defendants filed a civil lawsuit against the attorneys for the SEC, the Attorney General, and the U.S. Attorney of this District, to enjoin the investigation, declare that the SEC had no jurisdiction over the matter of the currency trading in which defendants were involved, and accuse the SEC attorneys of criminal misconduct. See Morton, et al. v. Ellenbogen, et al., Case No. CV 09-1875-PA-JCx (C.D. Call 2009). On motion by the government, the Court dismissed the action. See Docket No. 12. On June 29, 2009, defendants appealed the District Court's ruling to the Ninth Circuit. See Morton, et al. v. Ellenbogen, et al., Case No. 09-56041 (9th Cir. 2009). On September 15, 2009, the Ninth Circuit affirmed the dismissal by the District Court. See Docket No. 20.

(C.D. Cal. 2013).  This Court is familiar with the litany of false statements made by defendants in their Section 341 meeting of creditors proceedings, as submitted by the United States to the Court in supplemental briefing prior to trial in this case. Docket No. 173.  Defendants were questioned under oath by the U.S. Trustee's Office and the Chapter 7 trustee, wherein they lied in answering simple questions, for example, if they owned bank accounts.  Thereafter, the United States Trustee's Office filed an adversary proceeding against defendants to deny their discharge. See United States Trustee v. Morton, et al., 2:13-ap-01927-BB (C.D. Cal. 2013). After protracted litigation, on February 24, 2015, the United States Trustee's Office was successful against defendants to deny any bankruptcy discharge under 11 U.S.C. § 727(a)(4)(A).   Again, throughout both the bankruptcy and the adversary proceedings (which itself lasted 2 years), defendants filed a multitude of frivolous documents, all of which cost the government and the Bankruptcy Court time and effort in which to respond.

Nothing in the defendant's personal characteristics warrants a downward departure or a variance.

### b. Deterrence, respect for the law, and protection of the public

An 87-month sentence adequately addresses, in accordance with section 3553(a), the need for the sentence imposed "to promote respect for the law," as well as "the need to afford adequate deterrence to criminal conduct." The United States relies heavily on deterrence to enforce the internal revenue laws—more so than many other statutes. The reason is simple: the number of taxpayers in the United States far, far exceeds the number of auditors and criminal investigators available at the IRS.

The need for deterrence, both specific and general, warrants a strong sentence. This case presents a powerful need and opportunity for this Court to deter similar "sovereign citizen" fraudsters.  Members of the tax-defier movement

will take note of whatever sentences the Court imposes in this case.  In this case, real deterrence can only be achieved by a significant jail sentence.

To date, defendant has not accepted responsibility for his criminal conduct. Throughout these proceedings, defendant has demonstrated an utter disregard for the Court's authority and attacked the Court and the prosecution, rather than addressing the charges against him. The sentence that defendant receives in this case must take into account his complete lack of remorse and his continued efforts to obstruct lawful government actions.

In light of his ongoing denial of guilt and his continued adherence to tax-defier views, there is a strong likelihood that, given the opportunity, defendant would commit further crimes similar to those in which he was convicted. See United States v. Simkanin, 420 F.3d 397, 417 (5th Cir. 2003) (holding that defendant's beliefs about the tax laws demonstrated a likelihood of recidivism). The sentence recommended by the government is sufficient, but not greater than necessary, to address this concern.

### c.  Need to provide educational or vocational training

The need to provide defendant with any educational or vocational training, medical care, or other correctional treatment is generally not a factor in this case.

### d.  Need to avoid unwarranted sentencing disparities

An 87-month sentence reflects the seriousness of the offense, promotes respect for law, and provides for just punishment in this case. This sentence reflects the consensus that those convicted of economic crimes, such as those committed by defendant, should not be able to avoid incarceration.

The need to avoid unwarranted sentencing disparities also entails a consideration of the sentences that defendants in other similar cases have received. Defendant testified about two individuals from whom he learned the OID and bond schemes: Brandon Adams and Gordon Hall, both of whom, as the government pointed out on cross examination, are currently incarcerated for committing crimes

similar to those committed by defendant.  See Transcript, April 6, 2017, pp. 34, 35, 95, 96, 104, 105.

At trial, defendant testified in his direct that both defendants had their false OID returns prepared by Brandon Adams.  See Transcript, April 6, 2017, p. 10. In 2014, Adams was indicted for violations of 18 U.S.C. § 514 in the District of Arizona, and on January 13, 2015, plead guilty to two violations of 18 U.S.C. § 514.  See United States v. Adams, Case No. CR 14-00184-2-PHX-NVW (D. Ariz. 2014).  On June 16, 2015, Adams was sentenced to 40 months imprisonment. Id.

At trial, defendant testified that defendants learned about the bond scheme from Hall, who often stayed at defendants' house as a guest.  See Transcript, April 6, 2017, pp. 104, 105.  Hall was indicted, along with Brandon Adams, for violations of 18 U.S.C. § 514.  See United States v. Hall, Case No. CR 14-00184-1-PHX-NVW (D. Ariz. 2014). On January 22, 2015, after a trial, Hall was convicted of four counts of violations of 18 U.S.C. § 514, and was sentenced on June 17, 2015 to 96 months incarceration.  Id. Following an appeal by Hall, the Ninth Circuit upheld the ordered term of incarceration, but remanded the case to the District Court for clarification on 2 conditions of Hall's supervised release. Id. The recommended sentence of 87 months is well within the range for similarly situated defendants who taught the defendant the schemes he peddled.

For all of these reasons, defendant's criminal conduct warrants a significant prison sentence of 87-months. There are no other Section 3553(a) factors in this case which militate against imposition of such a sentence upon defendant; to the contrary, the 3553(a) factors on balance support the imposition of the recommended punishment.  The United States respectfully submits that this sentence is sufficient, but not greater than necessary, to comply with the purposes set forth in Title 18, United States Code, Section 3553(a).

///

///

### e.  Need for restitution

As noted by the Probation Office, pursuant to 18 U.S.C. § 3663, the Court should enter a restitution order against defendant in the amount of $480,322.55 to be paid to the IRS, which represents the amount of the erroneous refund issued to defendant for his false 2008 income tax return.  The government does not recommend the imposition of a fine.  PSR, ¶¶ 163, 167; Letter, pp.1-2.

### V.   Conclusion

Defendant made deliberate criminal choices to take advantage of the federal tax system for personal profit, and further peddle a worthless scheme to his "bond clients."  Defendant has been convicted of serious crimes which warrant an equally serious sentence.

For all of the above stated reasons, the Court should impose a sentence upon defendant of 87 months imprisonment, followed by a 5-year term of supervised release.  A restitution order in the amount of $480,322.55 should be entered against defendant, and defendant should be ordered to pay a special assessment of $2,900 to the Court.  Additionally, such sentence should include (or require defendant to be subject to) the terms and conditions enumerated by the Probation Office.


Respectfully submitted,

SANDRA R. BROWN
Acting United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

DATED: _____5/26/2017_____      _/s/_____
VALERIE L. MAKAREWICZ
JAMES C. HUGHES
Assistant United States Attorneys
Attorneys for the United States of America

-23-

## <u>PROOF OF SERVICE BY MAILING</u>

I am over the age of 18 and not a party to the within action.  I am employed by the Office of the United States Attorney, Central District of California.  My business address is 300 North Los Angeles Street, Suite 7211, Los Angeles, California 90012.

On **May 30, 2017**, I served

**UNITED STATES' SENTENCING MEMORANDUM AND RESPONSE TO THE PSR FOR DEFENDANT SEAN DAVID MORTON; DECLARATION; EXHIBITS**

on each person or entity name below by enclosing a copy in an envelope addressed as shown below and placing the envelope for collection and mailing on the date and at the place shown below following our ordinary office practices.  I am readily familiar with the practice of this office for collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.  Date of mailing: **May 30, 2017**

Place of mailing: Los Angeles, California

**See attached list**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on: **May 30, 2017,** Los Angeles, California.

/s/_____

**Barbara Le**

**RE: USA V. SEAN DAVID MORTON, ET AL**

**CASE NO.: CR 15-611 SVW**

<u>**Service List**</u>

**Sean David Morton**
565 Pier Avenue
Box 1274
Hermosa Beach, CA 90274-1274