NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
JAMES C. HUGHES (Cal. Bar No. 263878)
Assistant United States Attorney
Major Frauds Section
       1100 United States Courthouse
       312 North Spring Street
       Los Angeles, California 90012
       Telephone: (213) 894-0756
       Facsimile: (213) 894-6265
       E-mail:    Valerie.Makarewicz@usdoj.gov


Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 15-611-SVW |
|---|---|
| Plaintiff, | UNITED STATES' RESPONSE TO DEFENDANT'S UNEXHAUSTED MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) |
| v. | |
| SEAN DAVID MORTON, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Valerie L. Makarewicz and James C. Hughes, hereby files this response to defendant's unexhausted motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  The government asks this Court to dismiss the motion.  Even if the Court reaches the merits, however, the motion must be denied.

1        This response is based upon the attached memorandum of points

2    and authorities, the files and records in this case, and such further

3    evidence and argument as the Court may permit.

4    Dated: September 25, 2020          Respectfully submitted,

5                                       NICOLA T. HANNA
                                        United States Attorney
6
                                        BRANDON D. FOX
7                                       Assistant United States Attorney
                                        Chief, Criminal Division
8

9                                       _____/s/_____
                                        VALERIE L. MAKAREWICZ
10                                      Assistant United States Attorney

11                                      Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                      PAGE

I.    INTRODUCTION.................................................1

II.   STATEMENT OF FACTS..........................................2

      A.   Defendant's Crimes and Sentence........................2

      B.   Defendant's Current Motion for Compassionate Release
           and Failure to Exhaust Administrative Remedies...........3

      C.   The Bureau of Prisons' and Congress's Response to
           COVID-19...............................................6

III.  ARGUMENT....................................................8

      A.   Defendant's Home Confinement Request Must be Denied.......8

           1.   The Court lacks statutory authority to Order that
                the Defendant be placed on Home Confinement..........8

           2.   The BOP is Already Undertaking Extensive Efforts
                to Evaluate Inmates for Home Confinement............10

           3.   Other Administrative Remedies for Defendant........13

      B.   Defendant is not eligible for Compassionate Release......15

           1.   Legal Framework For Compassionate Release..........15

           2.   Defendant has Failed to Exhaust Administrative
                Remedies, Thus Depriving this Court of Authority
                to Consider His Claims.............................18

           3.   Defendant has filed no motion with the BOP re:
                COVID-19...........................................19

           4.   Defendant's Failure to exhaust cannot be excused....21

      C.   Defendant Has Failed to Demonstrate an "Extraordinary
           and Compelling" Reason to Allow Release in His Case......24

           1.   Defendant's serious, chronic health condition--
                identified by the CDC as a high-risk factor for
                COVID-19--potentially satisfies USSG § 1B1.13;
                but that is not enough.............................25

           2.   Defendant's continuing danger makes him
                ineligible for compassionate release...............27

      D.   Even If Defendant Were Otherwise Eligible, the 18
           U.S.C. § 3553(a) Factors Do Not Support a Shorter
           Sentence...............................................30

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                    PAGE

IV.   CONCLUSION....................................................33

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE(S)

**FEDERAL CASES**

Bowles v. Russell,
    551 U.S. 205 (2007)..........................................21

Brown v. Ives,
    543 Fed. App. 636 (9th Cir. 2013)...........................10

Brown v. Sanders,
    No. CV 11-4066-JST, 2011 WL 4899919 (C.D. Cal. Sept. 1,
    2011)........................................................9

Dillon v. United States,
    560 U.S. 817 (2010)..............................16, 17, 21, 25

Fort Bend County v. Davis,
    139 S. Ct. 1843 (2019)......................................22

Landgraf v. USI Film Prods.,
    511 U.S. 244 (1994).........................................21

Meyers v. Bethlehem Shipping Corp.,
    303 U.S. 41 (1938)..........................................22

Reeb v. Thomas,
    636 F.3d 1224 (9th Cir. 2011).............................9, 14

Ross v. Blake,
    136 S. Ct. 1850 (2016)......................................22

Sacora v. Thomas,
    628 F.3d 1059 (9th Cir. 2010)................................9

Shaw v. Bank of America Corp.,
    946 F.3d 533 (9th Cir. 2019)......................16, 19, 21

United States v. Accardi,
    No. 11-CR-12-RMB, 2013 WL 1903559 (S.D.N.Y. May 7, 2013)......10

United States v. Alam,
    --- F.3d ---,
    2020 WL 2845694 (6th Cir. Jun. 2, 2020)......................6

United States v. Applewhite,
    No. 08-CR-60037,
    2020 WL 137452 (D. Or. Jan. 13, 2020)...................28, 30

United States v. Ayon-Nunez,
    No. 16-CR-130-DAD,
    2020 WL 704785 (E.D. Cal. Feb. 12, 2020).....................31

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

United States v. Bishop,
    No. 07-CR-0516, 2015 WL 13235851 (D. Haw. Oct. 2, 2015).......10

United States v. Butler,
    970 F.2d 1017 (2d Cir. 1992)...................................18

United States v. Ceballos,
    671 F.3d 852 (9th Cir. 2011)....................................9

United States v. Chambliss,
    948 F.3d 691 (5th Cir. 2020)...................................18

United States v. Dragna,
    746 F.2d 457 (9th Cir. 1984)....................................9

United States v. Ebbers,
    --- F. Supp. 3d. ---,
    2020 WL 91399 (S.D.N.Y. Jan. 8, 2020).................18, 23, 25

United States v. Eberhart,
    No. 13-CR-313-PJH-1,
    2020 WL 1450745 (N.D. Cal. Mar. 25, 2020)........21, 22, 23, 24

United States v. Gileno,
    No. 19-CR-161-VAB-1,
    2020 WL 1307108 (D. Conn. Mar. 19, 2020)..................23, 31

United States v. Glass,
    561 F. Supp. 2d 535 (E.D. Pa. 2008)............................10

United States v. Gotti,
    No. 02-CR-743,
    2020 WL 497987 (S.D.N.Y. 2020)................................27

United States v. Grass,
    561 F. Supp. 2d 535 (E.D. Pa. 2008)............................14

United States v. Greenhut,
    No. 18-CR-48-CAS,
    2020 WL 509385 (C.D. Cal. Jan. 31, 2020).....................18

United States v. Hamilton,
    715 F.3d 328 (11th Cir. 2013)..................................18

United States v. Hir,
    517 F.3d 1081 (9th Cir. 2008)..................................29

United States v. Landers,
    No. 6:09-CR-893-10-JMC, 2013 WL 5530271 (D. S.C. Oct. 7,
    2013).........................................................10

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

United States v. Mangarella,
    No. 06-CR-151,
    2020 WL 1291835 (W.D.N.C. Mar. 16, 2020).....................18

United States v. Mayer,
    235 U.S. 55 (1914).........................................21

United States v. Nasirun,
    No. 99-CR-367,
    2020 WL 686030 (M.D. Fla. Feb. 11, 2020)...................25

United States v. Neman,
    No. 14-521-JAK,
    ECF No. 863 (C.D. Cal. Mar. 30, 2020)...................23, 24

United States v. Raia,
    954 F.3d 594 (3d Cir. 2020)............................passim

United States v. Rodriguez,
    CR 11-148-JVS,
    ECF No. 2021 (C.D. Cal. Mar. 21, 2020)......................1

United States v. Shah,
    No. 10-70-CJC,
    ECF No. 329 (C.D. Cal. Mar. 30, 2020)...................22, 31

United States v. Shields,
    No. 12-CR-410-BLF, 2018 WL 2728905 (N.D. Cal. June 7, 2018)...10

United States v. Sloane,
    No. 19-CR-10117-IT-11,
    ECF No. 647 (D. Mass. Mar. 19, 2020).......................22

United States v. Urso,
    No. 03-CR-1382,
    2019 WL 5423431 (E.D.N.Y. Oct. 23, 2019)...................28

United States v. Wages,
    271 F. App'x 726 (10th Cir. 2008)..........................18

United States v. Weidenhamer,
    No. CR16-01072-001-PHX-ROS,
    2019 WL 6050264 (D. Az. Nov. 8, 2019)......................16

United States v. Williams,
    65 F.3d 301 (2d Cir. 1995)..................................9

United States v. Willingham,
    No. CR113-010,
    2019 WL 6733028 (S.D. Ga. Dec. 10, 2019)...................25

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                    <u>PAGE</u>

<u>United States v. Willis</u>,
        382 F. Supp. 3d 1185 (D.N.M. 2019)...........................18

**STATE CASES**

18 U.S.C. § 3142(g)........................................27, 30

18 U.S.C. § 3582(c)......................................passim

18 U.S.C. § 3621(b)...........................................14

18 U.S.C. § 3622..............................................14

18 U.S.C. § 3624..............................................14

28 U.S.C. § 994(t).......................................17, 30

**OTHER AUTHORITIES**

Attorney General, Memorandum for Director of Bureau of Prisons
        Re: Increasing Use of Home Confinement at Institutions Most
        Affected by COVID-19 (April 3, 2020),
        <u>available at</u> https://www.justice.gov/file/1266661/download.....8

California Executive Order N-33-20 (March 19, 2020),
        <u>available at</u> https://covid19.ca.gov/img/Executive-Order-N-
        33-20.pdf...........................................23

Coronavirus Aid, Relief, and Economic Security Act ("CARES
        Act"),
        Pub. L. No. 116-136,
        134 Stat. 281 (March 27, 2020)................................8

Department of Justice, Statement of BOP Director and Medical
        Director Before the Senate Committee on the Judiciary (Jun.
        2, 2020),
        <u>available at</u>
        https://www.bop.gov/resources/news/pdfs/06022020_written_st
        atement.pdf...........................................3, 4, 8

Federal Bureau of Prisons Health Services Division, Pandemic
        Influenza Plan---Module 1: Surveillance and Infection
        Control (Oct. 2012),
        <u>available at</u>
        https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf........4

Federal Bureau of Prisons Health Services Division, Pandemic
        Influenza Plan---Module 3: Health Care Delivery (Oct.
        2012),
        <u>available at</u>
        https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf........5

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

Federal Bureau of Prisons Program Statement No. 5050.50,
     Compassionate Release/Reduction in Sentence: Procedures for
     Implementation of 18 U.S.C. §§ 3582 and 4205(g) (January
     17, 2019),
     available at
     https://www.bop.gov/policy/progstat/5050_050_EN.pdf...10, 26, 27

Federal Bureau of Prisons Program Statement No. 5280.09, Inmate
     Furloughs (January 20, 2011),
     available at
     https://www.bop.gov/policy/progstat/5280_009.pdf..............10

Federal Bureau of Prisons Program Statement No. 6190.04,
     Infectious Disease Management (Jun. 3, 2014),
     available at
     https://www.bop.gov/policy/progstat/6190_004.pdf..............5

Federal Bureau of Prisons,
     Correcting Myths About BOP and COVID-19,
     available at
     https://www.bop.gov/coronavirus/docs/correcting_myths_and_m
     isinformation_bop_covid19.pdf..............................6, 9

Federal Bureau of Prisons, Action Plan Phase V (Mar. 31, 2020),
     available at
     https://www.bop.gov/resources/news/20200331_covid19_action_
     plan_5.jsp.................................................5, 6

Federal Bureau of Prisons, COVID-19 Action Plan: Agency-Wide
     Modified Operations (Mar. 13, 2020),
     available at
     https://www.bop.gov/resources/news/20200313_covid-19.jsp.......5

Federal Bureau of Prisons, Home Confinement (Apr. 5, 2020),
     available at
     https://www.bop.gov/resources/news/20200405_covid19_home_co
     nfinement.jsp.................................................9

Federal Bureau of Prisons, Statement from BOP Director (Mar. 26,
     2020),
     available at
     https://www.bop.gov/resources/news/20200326_statement_from_
     director.jsp...............................................4, 7

Federal Bureau of Prisons, Update on COVID-19 (Mar. 24, 2020),
     available at
     https://www.bop.gov/resources/news/pdfs/20200324_bop_press_
     release_covid19_update.pdf...................................5

vii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

Federal Bureau of Prisons, Updates to BOP COVID-19 Action Plan:
    Inmate Movement (Mar. 19, 2020),
    <u>available at</u>
    https://www.bop.gov/resources/news/20200319_covid19_update.
    jsp  3

**<u>REGULATIONS</u>**

USSG § 1B1.13...............................................passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

"The COVID-19 pandemic is gripping the nation.  But that is a fate that affects all citizens, . . . not simply those incarcerated." Order, <u>United States v. Rodriguez</u>, CR 11-148-JVS, ECF No. 2021 (C.D. Cal. Mar. 21, 2020).  Thus, the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  <u>United States v. Raia</u>, 954 F.3d 594, 597 (3d Cir. 2020).  Nevertheless, without satisfying 18 U.S.C § 3582(c)(1)(A)'s mandatory exhaustion requirement, and while ignoring the 18 U.S.C. § 3553(a) factors and his continuing danger to the community, defendant seeks immediate-- <u>and permanent</u>--release from custody, or alternatively, home confinement.  (ECF 322 ("Motion"); 335, 341)  Neither statutory authority nor public health demands such a windfall.  Moreover, defendant's logic would endorse the mass, permanent release of convicted criminals <u>into</u> a pandemic, without regard for the factors justifying their sentences or for the Bureau of Prisons' (BOP's) aggressive efforts to address COVID-19.  That is not a way to fight disease.  It is not a way to protect the public.

Defendant's compassionate-release motion must be dismissed, stayed, or denied, for two reasons.  <u>First</u>, defendant has failed to comply with the mandatory exhaustion requirement of 18 U.S.C. § 3582(c)--requiring dismissal of the motion or, at minimum, a stay until the BOP has had an opportunity to assess defendant's yet-to-be-filed request.  <u>Second</u>, even if the Court could reach the motion's merits, defendant has not met his burden of establishing that he is eligible for and entitled to a sentence reduction.  Defendant has a

history of not complying with court orders, questioning the Court's jurisdiction over him, and violating terms of his bond.  <u>Third</u>, with respect to his request that the court modify his judgment to allow defendant to serve the remainder of his sentence on home confinement, it must be denied because the Court lacks statutory authority to grant defendant such relief. Only the BOP has authority under the existing judgment to place defendant on home confinement, and the ultimate decision regarding whether to do so rests exclusively with the BOP, and BOP's placement decisions are not subject to judicial review.

## II.  STATEMENT OF FACTS

### A.  Defendant's Crimes and Sentence

On April 7, 2017, defendant was convicted of one count of conspiracy to defraud the United States of America, two counts of filing false claims against the United States of America, and twenty-six counts of passing false financial instruments.

The Court will recall that defendant, representing himself throughout the duration of the case, filed numerous filings with the court, ranging from "Notices of Dishonor," bogus Requests for Judicial Notice, dismissal motions, a request for an identity hearing, objections, reconsideration motions, and other assorted nonsensical pleadings.  (ECF 69, 70, 73-81, 91, 100, 107-09, 115, 121, 130-38, 145-49, 158-59, 161-67, 179-84, 187-88, 190-92, 198, 213-14, 217-19, 229-31, 239, 244).

In preparation for sentencing, the United States Probation Office ("USPO") recommended a sentence of 78 months, and the government recommended 87 months.  (ECF 225, 226).  On June 19, 2017, defendant failed to appear for sentencing, and the Court issued a

bench warrant for his arrest.  ECF 237.  Two months later, defendant was arrested.  (ECF 256).  Thereafter, a revised pre-sentence report and recommendation letter was prepared by the USPO, wherein it recommended 109 months, and the government made the same recommendation.  (ECF 268, 270, 271).

On September 18, 2017, the court held defendant's sentencing hearing, wherein defendant addressed the court for over an hour, uninterrupted. Defendant was sentenced to 72 months in prison, a sentence substantially lower than the Guidelines range and the sentence requested for by the government.  In pronouncing the sentence, the Court highlighted defendant's "serious disruption" of the voluntary tax system, that he had numerous followers who convinced others to also disrupt the tax system for themselves and the need to deter others from following his lead, that the public and his victims needed to be protected from defendant, and that defendant displayed an "unusual" lack of contrition. (ECF 360).

Defendant's conviction was affirmed by the Ninth Circuit Court of Appeals in June 2020. (ECF 332).

**B.   Defendant's Current Motion for Compassionate Release and Failure to Exhaust Administrative Remedies**

Defendant is currently housed at the BOP Big Spring facility, a low-security federal correctional institution in Big Spring, Texas. Defendant's projected release date is October 24, 2022.  Accordingly, as of September 25, 2020, defendant has just begun his 37th month of his 72 month sentence.

While in prison, defendant has been disciplined twice.  In July 2019, defendant was caught with possessing an unauthorized item, and in October 2019, defendant was caught possessing unauthorized money

and abusing phone/disrupting monitoring.  (ECF 335, p. 47).

Defendant has been evaluated and assigned to work in the BOP facility

on regular duty and food service, and completed over 20 educational

courses.  (Id., pp. 47-48).  According to the BOP, defendant is not

eligible for placement in a residential rehabilitation center or home

confinement.  (Id., at 48).

Defendant filed his administrative request for compassionate

release with the warden of his prior facility on April 25, 2019. (ECF

322, Ex. A).  On May 20, 2019, 25 days after defendant's initial

request, the warden of defendant's previous facility issued a

determination letter denying defendant's request. (ECF 322 at Ex. B).

On July 3, 2019, defendant filed a motion for compassionate release

under the First Step Act, seeking early release based on a series of

medical conditions for which he was receiving and continues to

receive treatment from the BOP, including high blood pressure,

diabetes, and partial blindness. (ECF 322).  The United States of

America filed its opposition to defendant's motion, arguing that

defendant had failed to exhaust his administrative remedies prior to

filing his motion and, alternatively, that defendant was neither

eligible, nor entitled to the early termination of his sentence under

the substantive legal framework for compassionate release. (ECF 326).

On February 18, 2020, the Court denied defendant's motion for

compassionate release, citing defendant's failure to exhaust his

available administrative remedies.  (ECF 328).

In April 2020, defendant filed a "Notice of Protest and Motion

for Reconsideration," requesting that the Court reconsider the denial

of his first motion for compassionate release.  (ECF 329).  Defendant

claimed that he qualified for compassionate release based on his age

and percentage of time served as, according to defendant, the First Step Act has lowered the threshold for release on this basis to encompass prisoners 60 years and older who have served at least 66% of their sentence.

The government opposed defendant's renewed motion in May 2020, on the ground that defendant's appeal was still pending, that he did not demonstrate extraordinary and compelling reasons to allow for release, that he remained a danger to the community, and that no section 3553(a) factors supported a shorter sentence. (ECF 331).

Defendant has not filed any compassionate-release request with the BOP since his initial request made in April 2019.

Defendant filed two supplemental pleadings, arguing that the COVID-19 pandemic acerbates his underlying health conditions, and as an elderly individual, it justifies his early release. Defendant again (and mistakenly) argues that the First Step Act for compassionate relief lowered the age requirement to 60 and the imprisonment requirement to 2/3 of the sentence.  (ECF 335, 341). Defendant claims entitlement to release based on his age, obesity, "tumors" in his neck, Type 2 diabetes, blood pressure issues/hypertension, elevated white blood cells, and respiratory problems, magnified by the risk of COVID-19. (ECF 335, p. 10; ECF 241, p. 2).  At the foundation of defendant's compassionate-release motion, however, are allegations about the potential for an uncontained COVID-19 outbreak at his BOP facility, and how BOP is unable to manage his preexisting medical conditions. (ECF 241, p. 2).

In addition to wanting his sentence reduced so he may have immediate release, in the alternative, defendant requests that the

1   court release him to serve the remainder of his sentence in home
2   confinement. (ECF 335, p. 23).

3       **C.**    **The Bureau of Prisons' and Congress's Response to COVID-19**

4       The political branches have not been "insensitive in responding
5   to the COVID-19 pandemic." United States v. Alam, --- F.3d ---, 2020
6   WL 2845694, at *5 (6th Cir. Jun. 2, 2020).  To the contrary, BOP has
7   taken aggressive steps to protect inmates' health and to resist the
8   spread of COVID-19.  DOJ, Statement of BOP Director and Medical
9   Director Before the Senate Committee on the Judiciary (Jun. 2, 2020)
10  ("BOP Senate Testimony"), available at
11  https://www.bop.gov/resources/news/pdfs/06022020_written_statement.pd
12  f.

13      "[M]aintaining safety and security of BOP institutions is [the
14  BOP's] highest priority."  BOP, Updates to BOP COVID-19 Action Plan:
15  Inmate Movement (Mar. 19, 2020), available at
16  https://www.bop.gov/resources/news/20200319_covid19_update.jsp.
17  Thus, the BOP Director emphasized that the "response [to COVID-19] is
18  the Bureau's top priority."  BOP, Statement from BOP Director (Mar.
19  26, 2020) (Statement from BOP Director), available at
20  https://www.bop.gov/resources/news/20200326_statement_from_director.j
21  sp.

22      Meanwhile, the BOP has continued working with the CDC,
23  confirming that its approach aligns with current CDC guidance for
24  COVID management in correctional facilities.  Federal Bureau of
25  Prisons, Correcting Myths About BOP and COVID-19, at 1, available at
26  https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformat
27  ion_bop_covid19.pdf ("Correcting Myths").  Currently, BOP medical
28  staff are "conducting rounds and checking inmate temperatures at

least once a day"--twice a day where inmates are quarantined or in
isolation.  _Id._  All BOP staff and inmates have been issued cloth
masks to wear on a daily basis--with staff required to wear masks,
gloves, and potentially gowns when dealing with isolated and
quarantined inmates.  _Id._ at 1, 3.  "Cleaning supplies have been
provided to inmates," and the BOP has provided training on CDC best
practices regarding disease transmission and prevention (including
sanitation).  _Id._ at 2.  Common areas are sanitized multiple times a
day.  _Id._ at 3.

　　　　The gravity and severity of these measures reflect BOP's
commitment to fighting COVID-19 and protecting inmates.  However, BOP
has not been immune from the pandemic.  Currently, at defendant's
facility, 342 inmates are diagnosed with COVID-19.  Across the
country, 1,995 BOP inmates in BOP custody---out of a total of about
126,726---are currently diagnosed with COVID-19; an additional 12,184
have recovered.  BOP, COVID-19 Coronavirus (updated daily at 12pm
Pacific), _available at_
https://www.bop.gov/coronavirus/index.jsp (last visited September 25,
2020).  COVID-19-positive inmates are (or were) isolated from fellow
inmates and receiving medical treatment.  Correcting Myths, _supra_, at
2.  "Inmates whose conditions cannot be managed within the
institution are sent to the local hospital[.]"  _Id._

　　　　Of course, "as warned by the Surgeon General of the United
States, [the BOP] expect[s] to have more cases as the virus continues
to spread in the general community," but they "will continue to
diligently support all persons system-wide while doing everything
[they] can to do [their] part in mitigating the spread of the virus."
Statement from BOP Director, _supra_.

## III. ARGUMENT

### A. Defendant's Home Confinement Request Must be Denied

1. <u>The Court lacks statutory authority to Order that the Defendant be placed on Home Confinement</u>

Defendant's Motion and supplemental filings requests that this Court modify the judgment to allow defendant to serve the remainder of his sentence in home confinement.  The specific relief defendant seeks is neither necessary nor available.

Under 18 U.S.C. § 3624(c), the Director of the BOP has the exclusive authority to place a defendant on home confinement. Section 3624(c)(i) states:

> The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.  The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this statute.

18 U.S.C § 3624(c).  As defendant has not served more than 90 percent of his six-year sentence, defendant is not statutorily eligible for home confinement under § 3624(c).

The First Step Act authorized the Attorney General to waive the requirements of Section 3624 as necessary to provide for "the release of some or all eligible elderly offenders and eligible terminally ill offenders from the Bureau of Prisons facilities to home detention." 34 U.S.C. § 60541(g)(1)(C).  Defendant is not eligible for the home detention under the First Step Act's expanded home detention provision because he has not served 2/3 of his sentence.  34 U.S.C. § 60541(g)(5)(A)(ii)

Even if defendant was eligible for home confinement under § 3624(c) or 60541, the decision as to whether to place defendant on

8

home confinement, however, rests exclusively with the BOP.  Under 18 U.S.C. § 3621(b), all prisoner placement determinations, including placement on home detentions, are made by the BOP.  Id. ("The Bureau of Prisons shall designate the place of the prisoner's placement"); see also Sacora v. Thomas, 628 F.3d 1059, 1062 (9th Cir. 2010) (discussing BOP's statutory authority to place defendants on home confinement and in RRCs).  "While a [district] judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served.  Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons."  United States v. Ceballos, 671 F.3d 852, 855 (9th Cir. 2011)(citing United States v. Dragna, 746 F.2d 457, 458 (9th Cir. 1984) (per curiam) (citations omitted)); see also United States v. Williams, 65 F.3d 301, 307 (2d Cir. 1995) (same).

Furthermore, the Court also does not have authority to review or alter the BOP's discretionary placement decisions once they have been made.  Section 3621(b) explicitly states: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."  18 U.S.C. § 3621(b) (emphasis added); see also Reeb v. Thomas, 636 F.3d 1224, 1226-28 (9th Cir. 2011) (reviewing BOP's individualized placement decisions would be contrary to the "plain language" of § 3625 exempting such placement decisions from judicial review); Brown v. Sanders, No. CV 11-4066-JST, 2011 WL 4899919, at *2 n.3 (C.D. Cal. Sept. 1, 2011) ("Although Reeb involved a determination regarding [RDAP] as opposed to a CCC or home detention, the difference is immaterial as the RDAP determination is also made pursuant to § 3621."), aff'd sub nom

1   Brown v. Ives, 543 Fed. App. 636 (9th Cir. 2013).

2       Thus, to the extent defendant is seeking that the Court direct

3   BOP to place defendant on home confinement, defendant's request must

4   be denied as the Court lacks statutory authority to do so.[1]

5       2.   The BOP is Already Undertaking Extensive Efforts to
             Evaluate Inmates for Home Confinement
6

7       The government also notes that in response to the COVID-19

    pandemic, the BOP is already attempting to increase the use of home
8
    detention and is currently evaluating all inmates, including
9
    defendant, to determine their eligibility for home detention.
10
        The BOP can transfer vulnerable inmates to home confinement--and
11
    it is doing so aggressively, devoting all available resources to
12
    identifying and processing eligible inmates quickly.  BOP Senate
13
    Testimony at 6-7.  The CARES Act, which Congress passed to address
14
    the COVID-19 crisis, vastly increased BOP's statutory home-
15

16
    _____

17       [1] Defendant may argue that he is not asking the Court to exceed
    its jurisdictional authority because he is seeking only a
18  "recommendation" that he be granted home confinement, rather than
    requesting an order of home confinement from the Court.  District
19  courts have routinely rejected such arguments and declined to make
    recommendations that fall outside the court's statutory authority.
20  See United States v. Glass, 561 F. Supp. 2d 535, 538 (E.D. Pa. 2008)
    ("Because Congress has placed absolute discretion in the hands of BOP
21  and has not invited the Court to inject itself into the work release
    calculus," "it is not appropriate for the Court to make such a
22  recommendation[.]"); United States v. Shields, No. 12-CR-410-BLF,
    2018 WL 2728905, *3 (N.D. Cal. June 7, 2018) (declining to recommend
23  placement in a halfway house because the "Court has no better ability
    to assess the circumstances than the BOP"); United States v. Bishop,
24  No. 07-CR-0516, 2015 WL 13235851, at *2 (D. Haw. Oct. 2, 2015)
    (noting that the court could "find no persuasive authority" to make a
25  "post judgment recommendation regarding re-entry placement," before
    denying motion); United States v. Landers, No. 6:09-CR-893-10-JMC,
26  2013 WL 5530271, *2 (D. S.C. Oct. 7, 2013) ("The court is aware of no
    authority by which it may issue a recommendation for halfway house
27  placement at this late stage."); United States v. Accardi, No. 11-CR-
    12-RMB, 2013 WL 1903559, *1-2 (S.D.N.Y. May 7, 2013) (denying post-
28  judgment motion for judicial recommendation regarding re-entry
    placement for lack of jurisdiction).
                                    10

confinement authority.  See Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (March 27, 2020) (suspending eligibility limitations imposed by 18 U.S.C. § 3624(c)(2)).

In his April 3, 2020, memorandum authorizing the BOP to exercise its expanded CARES Act authority, the Attorney General emphasized that "time is of the essence," and he directed the BOP to focus on facilities that have significant numbers of COVID-19 cases within their inmate population.  Attorney General, Memorandum for Director of Bureau of Prisons Re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020), available at https://www.justice.gov/file/1266661/download.  Thus, the BOP is "urgently reviewing all inmates" to determine their eligibility, increasing resources to "review and make appropriate decisions as soon as possible."  Federal Bureau of Prisons, Home Confinement (Apr. 5, 2020) ("BOP, Home Confinement"), available at https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp.  Inmates "do not need to apply to be considered[.]"  Id. "The Department has also increased resources to review and make appropriate determinations as soon as possible."  Correcting Myths, supra, at 3.

BOP's release of inmates to home confinement must take into account, among other factors, whether a home is available where the inmate could be confined, whether the inmate could receive appropriate food and medical care there, the comparative risk to the inmate in home confinement in the identified location versus remaining in prison, the inmate's risk to the public through recidivism, and the availability of supervision during home

confinement or risk to the public if supervision is lacking.  BOP
also seeks to ensure that the inmates it releases to home confinement
are not already ill and therefore spreading infection to others--
including to the individuals necessary to make home confinement
successful.  To help accomplish that goal, BOP is requiring a 14-day
period of quarantine before any inmate is released to home
confinement.

Since the release of the Attorney General's March 26, 2020,
memorandum instructing BOP to prioritize home confinement as an
appropriate response to the COVID-19 pandemic, the BOP has placed an
additional 7,737 inmates on home confinement.  BOP, COVID-19
Coronavirus (updated regularly), available at
https://www.bop.gov/coronavirus/index.jsp (last visited September 25,
2020).  Indeed, the Attorney General's memorandum instructed the BOP
to exercise pre-CARES-Act authority as broadly as possible to protect
"the people in [their] custody," taking into consideration prisoners'
age, vulnerability to COVID-19, and other factors.  See Attorney
General, Memorandum for Director of Bureau of Prisons Re:
Prioritization of Home Confinement as Appropriate in Response to
COVID-19 Pandemic (March 26, 2020), available at
https://www.justice.gov/file/1262731/download.  As noted above, the
BOP now has additional authority under the CARES Act to place
prisoners on home confinement.

However, a "request invoking the CARES Act is not the same as
one invoking the First Step Act." United States v. Velazquez, 2020 WL
3452070 (D. Ariz. June 24, 2020). Among other things, requests for
home confinement under the CARES Act are not subject to judicial
review, whereas a request for compassionate release under § 3582(c)

are subject to judicial review. Id. at *2. Indeed, district courts have consistently rejected attempts to rely on home confinement requests under the CARES Act as a basis to satisfy or circumvent § 3582(c)'s mandatory exhaustion requirement. See id. (holding request for home confinement under CARES Act does not satisfy § 3582(c))'s exhaustion requirement); see also United States v. Allen, 2020 WL 2199626 (S.D. Ga. May 6, 2020); United States v. Lautenslager, 2020 WL 2836777 (E.D. Cal. June 1, 2020); United States v. Gray, 2020 WL 2991514 (S.D. Cal. June 4, 2020); United States v. Gregory, 2020 WL 3036001, at *1 (N.D. Ill. June 5, 2020); United States v. Hawkins, 2020 WL 3264115 (N.D. Ind. June 17, 2020); United States v. Alexander, 2020 WL 2468773, at *4 (M.D. La. May 13, 2020); United States v. Blount, 2020 WL 2892107, at *4 (W.D. La. June 1, 2020); United States v. Powell, 2020 WL 2848190 (E.D. Pa. June 2, 2020).

Again, the Court should reject defendant's request to place him in home confinement, as it does not have jurisdiction to do so. "While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision." United States v. Carlucci, 2020 WL 2527013, at *3 (D. Ariz. May 18, 2020); United States v. Velazquez, 2020 WL 3452070, at *2 (D. Ariz. June 24, 2020).

### 3. Other Administrative Remedies for Defendant

Inmates with COVID-19-based concerns also have a variety of administrative options they can pursue through the BOP itself. Although not reviewable by courts, these options include far more flexible remedies than permanent reduction of a sentence under 18

13

U.S.C. § 3582(c)(2)--remedies better suited to a temporary (if dire) pandemic.  See generally 18 U.S.C. § 3621(b) (precluding judicial review of BOP placement decisions); Reeb v. Thomas, 636 F.3d 1224, 1226-28 (9th Cir. 2011) (courts lack jurisdiction to review BOP's placement decisions under 18 U.S.C. §§ 3622-24); United States v. Grass, 561 F. Supp. 2d 535, 537 (E.D. Pa. 2008) (same).

The BOP has authority to grant an inmate a temporary furlough from custody, under 18 U.S.C. § 3622, for "obtaining medical treatment not otherwise available," "visiting a relative who is dying," or "any other significant activity consistent with the public interest."  See BOP Program Statement No. 5280.09, Inmate Furloughs (January 20, 2011), available at https://www.bop.gov/policy/progstat/5280_009.pdf.  Certain COVID-19-related conditions would potentially satisfy the BOP's requirements for such a furlough.  Id.

Under 18 U.S.C. § 3582(c)(1)(A), the BOP has initial authority to assess inmates' applications for compassionate release.  Only the original sentencing judge may ultimately authorize a reduction in an inmate's sentence.  However, the BOP, which has decades of experience diligently assessing such applications, has detailed regulations setting forth relevant procedures and considerations.  See BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (January 17, 2019), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

As noted above, defendant only filed his administrative request with BOP in April 2019, nearly a year prior to the COVID-19 outbreak. As a result, there is no record yet of the BOP's assessment of these

14

1    factors vis a vis defendant.  Here, defendant is effectively

2    attempting to circumvent BOP's ongoing evaluation process.  Allowing

3    defendant to do so could lead to inequitable treatment of similarly

4    situated defendants and potentially deprive BOP of the ability to

5    place another defendant, who is at significantly greater risk from

6    COVID-19, on home detention.  Thus, even if the Court had the

7    statutory authority to grant the requested relief--it does not--the

8    Court should decline to do so.

9        **B.   Defendant is not eligible for Compassionate Release**

10       Unable to directly challenge BOP's placement decision, defendant

11   seeks to have his sentence reduced via a compassionate-release

12   motion.  Defendant's request does not fare any better under the

13   compassionate release statute, 18 U.S.C. § 3582(c)(1).  Defendant is

14   not eligible for compassionate release under § 3582(c) because he has

15   failed to exhaust administrative remedies.  Thus, at minimum, the

16   Court must stay consideration of the motion until after the BOP has

17   had an opportunity to adjudicate defendant's yet-to-be-filed request-

18   -a period during which the BOP can also consider defendant's

19   eligibility for a transfer to home confinement.  Moreover, even if

20   this Court could reach the motion's merits, defendant's claims fail

21   because he is not eligible for compassionate release and, even if he

22   were, the COVID-19 crisis does not justify a reduction in his already

23   substantially below-Guidelines sentence.

24       1.   Legal Framework For Compassionate Release

25       A compassionate-release motion is a request for a permanent

26   reduction in a defendant's federal sentence.  A district court

27   generally "may not modify a term of imprisonment once it has been

28   imposed."  18 U.S.C. § 3582(c); see Dillon v. United States, 560 U.S.

817, 824–25 (2010).  Compassionate release is one of the few exceptions to this rule, allowing a court to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)[.]"  18 U.S.C. § 3582(c)(1).

Because this relief is both drastic and permanent, it is subject to strict statutory conditions.

<u>First</u>, a district court can evaluate a defendant's request for compassionate release <u>only</u> "after the defendant has fully exhausted all administrative rights" before the BOP.  Specifically:

> after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]

18 U.S.C. § 3582(c)(1)(A).  This requirement is mandatory.  <u>Raia</u>, 954 F.3d at 597; <u>Alam</u>, --- F.3d at ---, 2020 WL 2845694, at *3.  Indeed, in the government's view, it is jurisdictional.  <u>See generally</u> <u>Shaw v. Bank of America Corp.</u>, 946 F.3d 533, 541 (9th Cir. 2019) ("statutorily-provided exhaustion requirements deprive the court of jurisdiction"); <u>United States v. Weidenhamer</u>, No. CR 16-1072-1-PHX-ROS, 2019 WL 6050264, at *2 (D. Az. Nov. 8, 2019) (citing cases).

<u>Second</u>, in evaluating compassionate-release requests, courts must follow both the statute and relevant, binding policy statements. <u>See</u> <u>id.</u>; 28 U.S.C. § 994(t); USSG § 1B1.13.  Pursuant to those authorities, to be eligible for compassionate release, a defendant must demonstrate: (1) the existence of extraordinary and compelling reasons, within the meaning of the statute; and (2) that he is not a danger to the community.  18 U.S.C. § 3582(c)(1)(A).  Specifically,

1  the statute requires that any reduction be "consistent with

2  applicable policy statements issued by the Sentencing Commission"--in

3  this case, USSG § 1B1.13.  Id.  As the Supreme Court recognized in

4  Dillon, 560 U.S. at 827, because § 3582(c) permits a sentencing

5  reduction only where it is "consistent with applicable policy

6  statements issued by the Sentencing Commission," such policy

7  statements are binding on a court determining eligibility.

8      USSG § 1B1.13 explicitly defines the "extraordinary and

9  compelling reasons" that make a defendant eligible for compassionate

10 release.  See 28 U.S.C. § 994(t).  They include, as relevant here,

11 (1) a "terminal illness"; (2) a serious medical condition "that

12 substantially diminishes the ability of the defendant to provide

13 self-care within the environment of a correctional facility and from

14 which he or she is not expected to recover"; or (3) a defendant who

15 is at least 65 years old, is experiencing a serious deterioration in

16 physical or mental health because of the aging process, and "has

17 served at least 10 years or 75 percent of his or her term of

18 imprisonment, whichever is less."  USSG § 1B1.13 (other grounds

19 omitted).  USSG § 1B1.13, comment. (n.1(A)-(B)).  "[R]ehabilitation

20 of the defendant is not, by itself, an extraordinary and compelling

21 reason for purposes of this policy statement."  Id., comment. (n.3).

22     Defendant bears the burden to prove both that he has "exhausted

23 all administrative rights" and that "extraordinary and compelling

24 reasons" exist to support his motion.  18 U.S.C. § 3582(c)(1)(A); see

25 United States v. Greenhut, No. 18-CR-48-CAS,

26 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (defendant bears the

27 burden of establishing entitlement to sentencing reduction); United

28 States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) ("defendant,

1   as the § 3582(c)(2) movant, bears the burden of establishing"

2   eligibility); see generally  United States v. Butler, 970 F.2d 1017,

3   1026 (2d Cir. 1992) ("A party with an affirmative goal and

4   presumptive access to proof on a given issue normally has the burden

5   of proof as to that issue.").

6        Third, even for defendants who are statutorily eligible,

7   compassionate release is a "rare" and "extraordinary" remedy, within

8   district courts' discretion to deny.  United States v. Chambliss, 948

9   F.3d 691, 693-94 (5th Cir. 2020); United States v. Mangarella, No.

10  06-CR-151, 2020 WL 1291835, at *2-*3 (W.D.N.C. Mar. 16, 2020).

11  Specifically, "it is a rare case in which health conditions present

12  an 'exceptional reason'" to allow for release where detention would

13  otherwise be warranted.  See, e.g., United States v. Wages, 271 F.

14  App'x 726, 728 (10th Cir. 2008) (collecting pre-trial detention

15  cases); accord United States v. Willis, 382 F. Supp. 3d 1185, 1188

16  (D.N.M. 2019) ("most courts treat compassionate release 'due to

17  medical conditions [a]s ... a rare event.").  This reluctance to

18  expansively apply compassionate release is grounded in a concern that

19  any less narrow application would yield significant sentencing

20  disparities.  United States v. Ebbers, --- F. Supp. 3d. ---, 2020 WL

21  91399, at *6 (S.D.N.Y. Jan. 8, 2020).

22            2.   Defendant has Failed to Exhaust Administrative
                   Remedies, Thus Depriving this Court of Authority to
23                 Consider His Claims

24       Defendant's motion must be dismissed, because he has failed to

25  exhaust administrative remedies.  At minimum, the Court should stay

26  consideration of the motion until after the BOP has had an

27  opportunity to adjudicate defendant's yet-to-be-filed request--a

28  period during which the BOP can also consider defendant's eligibility

for a transfer to home confinement.  Even if this Court could reach the motion's merits, defendant's claims must fail: despite his medical condition, he is not eligible for compassionate release because he remains a danger to the community.  Moreover, under the 18 U.S.C. § 3553(a) factors, the COVID-19 crisis does not justify a permanent, irrevocable reduction in his sentence.

This Court lacks authority to act on defendant's compassionate-release motion at this time.  Under 18 U.S.C. § 3582(c)(1)(A), the Court "may not modify a term of imprisonment once it has been imposed except" upon a defendant's motion "<u>after</u> the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"  Because this statutory condition has not been satisfied here, the Court lacks authority to adjudicate defendant's claims.  <u>See</u> <u>Shaw</u>, 946 F.3d at 541.  Moreover, contrary to defendant's assertion, failure to exhaust cannot be excused.  Instead, as the Third Circuit recently held, § 3882(c)(1)(A) "presents a glaring roadblock foreclosing compassionate release at this point.  <u>Raia</u>, 954 F.3d at 597.

3.   <u>Defendant has filed no motion with the BOP re: COVID-19</u>

Defendant has not shown that he has filed any administrative request with the warden other than the one made in April 2019, which obviously did not raise COVID-19 at all.  Before the Court may decide this motion, the government avers that defendant must file another request with BOP alleging COVID-19 concerns, as the administrative claims are issue-specific.  Only after 30 days from the BOP's receipt

of that request can this Court consider defendant's motion.   18

U.S.C. § 3582(c)(1)(A)(i).   Even then, a stay may be warranted to

allow the BOP to complete its own review.

     In defendant's first and only request to BOP in April 2019, he

raised health concerns regarding his eyesight, diabetes, and

hypertension, clearly non-COVID-19 claims.   (ECF 326).   However, in

his renewed Motion and supplemental papers, defendant now is raising

COVID-19 claims, therefore, defendant's additional claims are

unexhausted and the court should (at minimum) stay consideration of

the motion until 30 days after he presents a new request to the

warden.

     Proper exhaustion necessarily requires the inmate to present the

same factual basis for the compassionate-release request to the

warden.   Indeed, 28 C.F.R. § 571.61, which outlines the process for

submitting a compassionate-release request to the warden, requires

that the request contain "at minimum . . . [t]he extraordinary or

compelling circumstances that the inmate believes warrant

consideration."   Thus, as another court recently recognized when a

defendant raised COVID-19-based claims for the first time before the

court, "[b]ecause defendant has never made a release application to

the BOP based on this new set of issues, defendant has not exhausted

his administrative remedies as required by 18 U.S.C. §

3582(c)(1)(A)."   United States v. Bonventre, No. 10-CR-228, 2020 WL

1862638, at *1 (S.D.N.Y. Apr. 14, 2020); but see, United States v.

Parker, --- F.Supp.3d ---, 2020 WL 2572525, at *6-7(C.D. Cal. May 21,

2020).

4.   <u>Defendant's Failure to exhaust cannot be excused</u>

"[S]tatutorily provided exhaustion requirements deprive the court of jurisdiction and, thus, preclude any exercise of discretion by the Court."  <u>Shaw</u>, 946 F.3d at 533 (citation omitted).  Given § 3582(c)(1)(A)'s plain language and purpose, the requirements for filing a sentence reduction motion--including the defendant exhaust administrative remedies or wait 30 days after filing a request with the warden--are jurisdictional.  Section 3582(c) states that a "court may not modify" a term of imprisonment except in enumerated circumstances.  18 U.S.C. § 3582(c).  It thus "speak[s] to the power of the court," <u>Landgraf v. USI Film Prods.</u>, 511 U.S. 244, 274 (1994) (citation omitted), delineating "when, and under what conditions," a court may exercise its "adjudicatory authority," <u>Bowles v. Russell</u>, 551 U.S. 205, 212-13 (2007) (quoting <u>Eberhart v. United States</u>, 546 U.S. 12, 16 (2005) (per curiam)).  That conclusion is reinforced by courts' historical powerlessness to modify a sentence once entered.  <u>See Dillon</u>, 560 U.S. at 825; <u>United States v. Mayer</u>, 235 U.S. 55, 67-69 (1914).

However, although the government maintains that § 3582(c)(1)(A)'s time limit is jurisdictional, the point is ultimately academic.  Even if § 3682(c)(1)(A)'s exhaustion requirement is not jurisdictional, it is at least a mandatory claim-processing rule that must be enforced if a party "properly raise[s]" it.  <u>Eberhart</u>, 546 U.S. at 19; <u>see generally</u> <u>Fort Bend County v. Davis</u>, 139 S. Ct. 1843, 1848-50 (2019).  This is exactly what the Sixth Circuit recently concluded in <u>Alam</u>.  --- F.3d at ---, 2020 WL 2845694, at *3-*4.  The government raises the rule here, and it thus must be enforced.  <u>Id.</u>

COVID-19 does not alter this conclusion.  Id. at *4-*5.  While judicially created exhaustion requirements may sometimes be excused, a court may not ignore a statutory command.  "[M]andatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion." Ross v. Blake, 136 S. Ct. 1850, 1857 (2016). Thus, exhaustion remains mandatory regardless of a court's view of the merits: "[o]bviously, the rules requiring exhaustion of the administrative remedy cannot be circumvented" simply by "asserting that [an opposing party's argument is] groundless[.]" Meyers v. Bethlehem Shipping Corp., 303 U.S. 41, 51-52 (1938).

Consistent with these rules, numerous courts have rejected similar claims in the context of unexhausted COVID-19-based requests for compassionate release.  That the "pandemic is unprecedented" cannot excuse exhaustion.  Alam, --- F.3d at ---, 2020 WL 2845694, at *4.  "Because defendant failed to exhaust his administrative remedies, his request for compassionate release based on COVID-19 concerns fails." United States v. Shah, No. 10-70-CJC, ECF No. 329, at 3 (C.D. Cal. Mar. 30, 2020).  Absent such exhaustion, the court "does not have authority to grant the requested relief." United States v. Sloane, No. 19-CR-10117-IT-11, ECF No. 647, at 2 (D. Mass. Mar. 19, 2020) (noting no request made to the USP Lompoc Warden); United States v. Gileno, No. 19-CR-161-VAB-1, 2020 WL 1307108, at *3– *4 (D. Conn. Mar. 19, 2020) (denying COVID-19-based compassionate-release motion for lack of exhaustion); United States v. Eberhart, No. 13-CR-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar25, 2020) (same); United States v. Neman, No. 14-521-JAK, ECF No. 863, at 4–6 (C.D. Cal. Mar. 30, 2020) (same).

Exhaustion is particularly inexcusable for errors that an administrative tribunal is competent to address.  Barron v. Ashcroft, 358 F.3d 674, 678 (9th Cir. 2004).  Indeed, "[t]he seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk."  Alam, --- F.3d at ---, 2020 WL 2845694, at *4. "Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause."  Id.  Instead, "[g]iven BOP's shared desire for a safe and healthy prison environment . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added--and critical--importance."  Raia, 954 F.3d at 597.

Here, the BOP is not merely competent to address defendant's compassionate-release claims; it is uniquely qualified to do so. Until First Step Act, the BOP had exclusive authority to adjudicate such claims.  Notably, the First Step Act did not change the factors relevant to compassionate release, only the procedures by which a defendant can raise such claims.  Ebbers, 2020 WL 91399, at *4.  The BOP thus has immense expertise, both in (1) assessing the safety and health of their inmates and (2) managing the administration of their facilities.  As noted above, it likewise has other administrative procedures potentially available for addressing COVID-19-based concerns--none of which defendant has given them an opportunity to evaluate.  Exhaustion cannot--but also should not--be excused. Eberhart, 2020 WL 1450745, at *2 (declining to excuse failure to exhaust COVID-19 compassionate-release motion); Neman, No. 14-521-JAK, ECF No. 863, at 6 (same).

Indeed, rather than relying on BOP to address what both Congress and the Attorney General have emphasized as a time-sensitive, rapidly evolving emergency--and after Congress placed a specifically targeted tool in the BOP's hands through the CARES Act--defendant envisions a system where hundreds of federal district judges around the country use the tools of litigation to replicate (and potentially override) BOP's efforts.  And critically, under defendant's approach, courts must attempt to assess facts that can change within days--if not hours--when many of the changing circumstances could nullify the intended goal of any court order.

Until 30 days have elapsed since defendant applied for compassionate release with BOP, this Court lacks authority to grant relief.  18 U.S.C. § 3582(c)(1)(1).  The Court should thus dismiss defendant's motion.  At minimum, the Court should stay consideration of the motion until the BOP has completed its administrative review.

**C.   Defendant Has Failed to Demonstrate an "Extraordinary and Compelling" Reason to Allow Release in His Case**

Even if the Court had authority to consider the merits of defendant's claims--it does not--defendant has failed to establish his eligibility for compassionate release.  As the Third Circuit recently held, "[w]e do not mean to minimize the risks that COVID-19 poses in the federal prison system," but the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison cannot independently justify compassionate release"--particularly given "BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."  Raia, 954 F.3d at 597.  Here, notwithstanding defendant's health condition, his

24

continuing danger to the community makes him ineligible for compassionate release.

        1.   <u>Defendant's serious, chronic health condition--identified by the CDC as a high-risk factor for COVID-19--potentially satisfies USSG § 1B1.13; but that is not enough</u>

"The First Step Act did not revise the substantive criteria for compassionate release"--criteria that is set forth in the Sentencing Commission's binding "policy statement," USSG 1B1.13. <u>Ebbers</u>, 2020 WL 91399, at *4—*5; 18 U.S.C. § 3582(c)(1)(A). As courts have recognized, Congress intended that the "Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision." <u>United States v. Willingham</u>, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting split in authority). The Sentencing Commission's policy statement--USSG § 1B.1.13--is thus binding on this Court. <u>See</u> <u>Dillon</u>, 560 U.S. at 827; <u>see, e.g.</u>, <u>United States v. Nasirun</u>, No. 8:99-CR-367, 2020 WL 686030, at *2 (M.D. Fla. Feb. 11, 2020).

Thus, as noted above, a defendant seeking compassionate release must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as relevant here, (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, comment. (n.1(A)).

The general threat of COVID-19--which poses a threat to every non-immune person in the country--does not satisfy these conditions. "[T]he mere existence of COVID-19 in society and the possibility that

25

it may spread to a particular prison alone cannot independently justify compassionate release." Raia, 954 F.3d at 597; see also Eberhart, 2020 WL 1450745 at *2 ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."). To classify COVID-19 as an extraordinary and compelling reason, by itself, would be inconsistent with the text of the statute and the policy statement. Moreover, it would have detrimental real-world effects: interfering with BOP's organized anti-COVID-19 efforts, resulting in the inequitable treatment of inmates, and undercutting the strict criteria BOP employs to determine inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a viral pandemic.

However, defendant's serious, chronic health condition is potentially qualifying under the policy statement in light of the risk of infection of COVID-19. Namely, he suffers from obesity and diabetes, which are a chronic medical conditions identified by the Centers for Disease Control as a high-risk factors for COVID-19 complication. See generally Centers for Disease Control, Coronavirus Disease 2019 (COVID-19)--People Who Are At Higher Risk, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed September 22, 2020). Such a serious, chronic health condition is one from which defendant "is not expected to recover," and which--in the presence of COVID-19--may be both "serious" and "substantially diminish[] the

ability of the defendant to provide self-care" in a correctional environment.[2]  USSG § 1B1.13, comment (n.1(A)(ii)(I)).

However, that is not sufficient.

### 2. Defendant's continuing danger makes him ineligible for compassionate release

Serious illness is not the only requirement for compassionate-release eligibility; a defendant must also demonstrate that he is "not a danger to the safety of any other person or to the community." USSG § 1B1.13(2).  Defendant cannot make that showing, and thus he is ineligible for a reduced sentence.

Specifically, this Court may not reduce a defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  USSG § 1B1.13; see United States v. Gotti, No. 02-CR-743, 2020 WL 497987, at *6 (S.D.N.Y. 2020) (release was inappropriate regardless of extraordinary and compelling circumstances; defendant posed a continuing danger to the public); accord United States v. Urso, No. 03-CR-1382, 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019); United States v. Applewhite, No. 08-CR-60037, 2020 WL 137452, at *2 (D. Or. Jan. 13, 2020) (denying compassionate release for seriously ill 80-year-old inmate based on danger).

---

[2] The government previously noted that defendant's chronic medical conditions were being managed by BOP.  Defendant is currently receiving treatment for his diabetes and hypertension, and suffers from low vision in one eye. (ECF 326, Declaration of Heidi Haight-Biehler, D.O ("Haight-Biehler Decl."), ¶ 5; Moreover, defendant is receiving sufficient care for his medical conditions within the BOP, and his ailments do not prevent him from performing all activities of daily living while in custody or adequately administering self-care. Id. at ¶¶ 6, 9; Motion, ECF 335, pp. 54-62, 66-99 (medical records), 47-48 (defendant's work assignments and list of completed educational courses).

1    Nothing about the COVID-19 pandemic reduces defendant's danger.
2 To the contrary, defendant poses a very real danger to the community.
3 As seen by defendant's appeal filing with the Ninth Circuit,
4 defendant has not stopped espousing any of his sovereign rhetoric or
5 cease arguing about the lack of jurisdiction of the Court or its
6 application of the law in this case. Further, the Court recalls how
7 defendant failed to comply with the Court's orders regarding post-
8 trial release and failed to appear for sentencing, and how the Court,
9 at most hearings and appearances, had to address defendant's constant
10 arguments about its jurisdiction to proceed with the criminal trial
11 against him.  Defendant has been disciplined twice in custody for
12 having unauthorized items and abusing the telephone privileges.

13    And danger to the community is not limited to physical violence.
14 It can take different forms. See, e.g., United States v. Reynolds,
15 956 F.2d 192, 192 (9th Cir. 1992) ("[D]anger may, at least in some
16 cases, encompass pecuniary or economic harm."). The Court heard
17 testimony from Ms. Lavender, a victim, who testified about the money
18 she paid defendant and his co-defendant, Melissa Morton, for the
19 bogus paperwork that was to relieve her debt, and recalled at
20 sentencing her "sorry" tale of believing in defendant and his scheme
21 to relieve her debt. The Court heard testimony from other financial
22 institutions about the bogus paperwork they had received from other
23 "clients" of defendants, who paid them money to erase their debt. At
24 sentencing, in referencing victims like Lavender and the IRS, the
25 Court found that defendant's 72-month sentence was "the lowest
26 sentence the court thinks is available to serve the interest of
27 justice.  The guidelines were substantially higher; the government
28 asked for a hire [sic] sentence, but that's the court's

28

determination." (ECF 306, 53:4-14).  Furthermore, at the sentencing, the Court noted that defendant had a following and is charismatic in not only causing harm to himself, but selling the false bonds to others which created IRS problems for them.  (ECF 306, 54:4-9).  The court stated that in its experience, defendant's lack of contrition was unusual, and "he remarkably would continue to engage in this type of conduct or a similar conduct."  (ECF 306, 53:11-13).

In the current climate, irresponsible social habits also gravely endanger the community.  United States v. Hir, 517 F.3d 1081, 1088 (9th Cir. 2008) ("community," within the meaning of 18 U.S.C. § 3142, is not necessarily confined to local geography).  All California residents are currently required "heed the current State public health directives" to avoid the spread of COVID-19. California Executive Order N-33-20 (March 19, 2020), available at https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf.  Such rules, though enforceable by peace officers, rely largely on voluntary compliance.  A person who ignores such rules could increase infection rates, leading to citizens' severe illness and death.  Defendant's history reflects an unwillingness to follow rules and a disregard for the welfare of others--characteristics that now have potentially fatal consequences.

Finally, defendant's age and purported rehabilitation alone do not satisfy his burden.  The standard for compassionate release is not just whether someone is elderly and has performed well in prison. To the contrary, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  USSG § 1B1.13, comment. (n.3).  Even being a "model inmate" does not warrant an

"abrupt departure from [a defendant's] current sentence."
Applewhite, 2020 WL 137452, at *2.  Moreover, because there is a
significant difference between doing well in prison and doing well in
society, this Court, in evaluating the danger posed by defendant,
cannot ignore the nature and circumstances of the offense,
defendant's ties to the community, and his criminal history.  18
U.S.C. § 3142(g).  An examination of those factors weighs against
early release.

     **D.   Even If Defendant Were Otherwise Eligible, the 18 U.S.C.
        § 3553(a) Factors Do Not Support a Shorter Sentence**

Any compassionate-release decision--even for a statutorily
eligible defendant--must also consider the factors under 18 U.S.C.
§ 3553(a).  See 18 U.S.C. § 3582(c)(1)(A)(i).  Defendant addresses
none of these factors in his motion.  Those factors--which this Court
already considered when imposing defendant's 72-month sentence--do
not support his request for premature, permanent release.  They
support his original sentence.

First, and most centrally, the facts of the case do not merit a
reduction of defendant's sentence.  The government extensively
outlined its position regarding the 3553(a) factors in favor of a
109-month sentence for defendant in its sentencing position filed
with the Court. (ECF 225, pp. 18-23, and ECF 268). Defendant already
received a lenient sentence from the Court, as noted above, the Court
rejected the government's and USPO's requests for a substantially
higher sentence and sentenced well below the Sentencing Guidelines
range for a Level 29 or 30 (87-121 months). Defendant's conviction
has been upheld on appeal.

1       <u>Second</u>, although defendant's health condition is perhaps

2   qualifying under USSG § 1B1.13, he provides no evidence that the BOP

3   is unable to manage that condition--particularly given the number of

4   reported COVID-19 infections in his designated facility.   A BOP

5   doctor from defendant's prior facility indicated that defendant

6   receives proper treatment, when he partakes, and noted he often

7   misses appointments and medication by his own choosing. (ECF 326-2,

8   ¶¶ 6-7. Indeed, there is nothing to suggest that defendant would be

9   safer outside of custody than in custody.

10       Particularly considering both how the BOP has addressed COVID-19

11   generally, defendant's circumstances are not sufficiently

12   extraordinary and compelling to justify a modified sentence.   Indeed,

13   defendant's arguments totally overlook the BOP's ability to treat

14   infectious disease.   Even chronic conditions "that can be managed in

15   prison are not a sufficient basis for compassionate release."   <u>United</u>

16   <u>States v. Ayon-Nunez</u>, No. 16-cR-130-DAD, 2020 WL 704785, at *2-3

17   (E.D. Cal. Feb. 12, 2020).   Thus, the Court "cannot assume that the

18   Bureau of Prisons will be unable to manage [any] outbreak or

19   adequately treat [defendant] should it emerge at his correctional

20   facility while he is still incarcerated."   <u>Gileno</u>, 2020 WL 1307108,

21   at *4 (denying compassionate-release motion in COVID-19-related case

22   involving a defendant who raised specific health concerns); <u>accord</u>

23   <u>Shah</u>, No. 10-70-CJC, ECF No. 329, at 3.   By defendant's logic, such

24   conditions would <u>universally</u> qualify convicted inmates for shorter

25   sentences given the present pandemic.   That is and cannot be the

26   case.

27       Indeed, there is nothing to suggest that defendant would be

28   safer outside of custody than in custody.   Defendant's circumstances

are--in the present pandemic--far closer to ordinary than "extraordinary."  To grant defendant a sentence reduction based such facts would not satisfy the 18 U.S.C. § 3553(a) factors; it would result in a windfall.

Third, it bears emphasis that defendant's health condition is not itself dire--as his own medical and prison records reflect. While defendant is obese and suffers from diabetes, he is able to participate in prison life/classes despite alleged ailments, and again, his previous medical doctor declared defendant refused to participate in therapies.

Fourth, defendant has failed to propose an adequate release plan--a factor relevant to eligibility, and which the BOP carefully considers before recommending compassionate release.  Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (January 17, 2019), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.  Defendant must, pursuant to BOP regulations, not only indicate where he will reside and how he will support himself, but how he will "receive medical treatment and how the inmate will pay for such treatment."  Id.  He has failed to do so.  In essence, defendant proposes returning to the same circumstances in which defendant committed his original crimes, and makes unsupported representations that his friends will assist him financially and the government will pay for his medical treatment, or he'll get free treatment in Mexico, a country that is dealing itself with a desperate COVID-19 outbreak.  (ECF 335, p. 64)

At bottom, granting compassionate release would undermine the 18 U.S.C. § 3553(a) factors, resulting in an effective sentence of just

36 months--far below the applicable Guideline range.  The law, and the specific facts of defendant's case, neither demand nor endorse that result.

## IV.  CONCLUSION

Defendant's motion for compassionate release should be dismissed.  At the very, least, the Court should stay consideration of his motion until the BOP has completed its administrative review. Even if the Court could reach the merits of defendant's motion, the motion should be denied for the reasons set forth above.  Home confinement is not available to defendant under any program, and the Court has no jurisdiction to place defendant in such a program.

Finally, the government requests that, if this Court ultimately grants relief, the government be given an opportunity to brief appropriate conditions--including a release plan, a mandatory quarantine, and a period of home confinement as a condition of supervised release.  See 18 U.S.C. § 3582(c)(1)(A).